The first ground of objection heretofore taken by the prisoner, that to the sufficiency of the indictment, is no longer seriously pressed, and is untenable.
The more difficult question arises under the second objection, to wit: that the sentence pronounced upon the prisoner was without authority of law, and therefore, that the judgment should be reversed and the prisoner discharged. It is insisted that the offense was committed and the trial had, while the provisions of the act of 1860 were in force, while the punishment imposed was not in accordance with that prescribed by the act of 1860, but in accordance with the provisions of the revised statutes which were not in force at the time of the sentence, and were not, at all events, applicable to this particular offense. It is further insisted *Page 137 
that the act of 1860 did not in express terms, or even by necessary implication, impose the punishment of death for the offense of murder in the first degree, nor prescribe any mode in which the punishment should be inflicted, and that as the punishment of death in the mode prescribed in the revised statutes was by the act of 1860, expressly abolished, capital punishment could no longer be inflicted, first, because it was not prescribed as a punishment, and second, because no mode of inflicting it was declared.
I have, heretofore, expressed the opinion in the case of ThePeople v. Hartung (23 How. 314), that capital punishment for murder in the first degree, was not abolished by the act of 1860, and that it was competent for the legislature by a subsequent act (as they did in 1861), to declare the mode in which such punishment should be inflicted, even as to offenses committed before the passage of the act of 1860. To those opinions I still adhere. They are those which prevailed in the court below, except in a single particular, to which I shall presently refer. The court of appeals also, in the same case of Hartung v. ThePeople (22 N.Y.R. 95), were of the opinion that the punishment of death for the crime of murder in the first degree was not abrogated by the act of 1860, and this opinion was reiterated in the case of Lowenberg v. The People (26 How. 202.)
The offense of which the prisoner was convicted was committed on the eighteenth day of October 1861. The indictment was found at a court commenced on the 10th day of November 1862. According to the record presented to us, the prisoner appeared and pleaded to such indictment on the 13th day of April 1863, and was tried and convicted thereon, at a court held on the 20th day of April 1863, and thereupon, according to the record, he was adjudged to be removed to the common jail of Kings county, and there detained until the 23d day of September, (then), next and thence removed to the place of execution, and there *Page 138 
hung by the neck until he be dead. Judgment appears to have been signed on the 3d day of August 1863. There is appended to the record proper, a statement in the error book, that on the 25th day of June 1863, a motion was made in behalf of the prisoner in arrest of judgment, before the court of oyer and terminer, and that such motion was on the 3d day of August 1863, denied. On the 15th day of August 1863, a writ of error from the supreme court to the court of oyer and terminer was allowed by Justice BROWN, and on the 18th day of December 1863, the judgment of the court of oyer and terminer was affirmed by the supreme court of the 2d district. On the 21st day of December 1863, the same justice allowed a writ of error from this court to the supreme court with a stay of proceedings thereon, and the case comes before us on the return to that writ of error, upon the record alone, without any bill of exceptions.
The course of legislation applicable to the case has been as follows: On the 14th day of April 1860 (Laws of 1860, chap. 410), the legislature passed the act already commented on, "in relation to capital punishment, and for the more certain punishment of the crime of murder." This act, as before stated, while it assumes and substantially declares that there are crimes punishable with death, and that persons convicted thereof shall be sentenced to suffer such punishment; also declares that such punishment shall be preceded by at least one year's imprisonment in the State prison, and shall not be inflicted until a warrant shall be issued by the governor, commanding the sentence of death to be carried into execution. It contains no express provision directly prescribing the punishment of death for any offense, unless it be contained in the first section of the act, which is as follows: "No crime hereafter committed except treason and murder of the first degree, shall be punished with death, in the State of New York." It expressly repeals those sections of the revised statutes, which prescribe *Page 139 
the punishment of death for murder, or so modifies the same as to require the punishment to be administered according to the provisions of the act of 1860. Among the sections thus repealed, is section 25 of title 1 of chapter 1 of part 4 of the revised statutes, which is as follows: — "The punishment of death shall in all cases be inflicted by hanging the convict by the neck until he be dead."
On the 17th day of April, 1861, (Laws of 1861, chap. 303,) the legislature, by an act then passed, expressly revived and reinstated all the aforesaid sections of the revised statutes, (which had been repealed or modified by the act of 1860,) so far as respected offenses committed previously to the 4th day of May, 1860, (being the day when the act of 14th April, 1860, took effect).
On the 12th day of April, 1862, (Laws of 1862, chap. 197,) the legislature expressly repealed the two last mentioned acts of 1860 and 1861, and amended the revised statutes in various particulars in regard to the offense and punishment of murder, making two degrees of the offense, and prescribing the punishment of death for murder in the first degree. In this statute is the following section: "§ 2. No offense committed previous to the time when this statute shall take effect shall be affected by this act, except that where any punishment shall be mitigated by the provisions of this act, such provision shall control any judgment to be pronounced after the said act shall take effect, for any offenses committed before that time."
By a comparison of dates it therefore appears that the offense in question was committed after the passage of the act of 1861, and prior to the passage of the act of 1862, and that the indictment was found and the trial and conviction had subsequent to the passage of the last mentioned act. If the words "no offense committed previous to the time when this statute shall take effect, shall be affected by this act," in the section just quoted, cover not only the offense itself but any judicial proceedings and *Page 140 
sentence which may be had for its punishment, then the act of 1862 has no bearing whatever upon the case under consideration, and the punishment of the offense must be governed entirely by the act of 1860; for the offense was committed previous to the act of 1862; and the act of 1861 relates exclusively to offenses committed prior to May 4, 1860, and this offense was committed since. Now the act of 1860, if applicable to this case, while it required a sentence of death to be pronounced on a conviction for a crime punishable with death, expressly required, also, that the convict should, at the same time, be sentenced to confinement at hard labor in the State prison until such punishment of death should be inflicted; which latter punishment could not be inflicted except upon the warrant of the governor and after the lapse of a year.
The sentence pronounced in this case did not in any degree conform to this law, for it contained no clause subjecting the prisoner to confinement in the State prison, and it expressly directed the execution of the sentence of death long before the lapse of a year, and without any warrant from the governor.
It becomes necessary, therefore, to give a construction to the section in question.
I am of opinion, in the first place, that it applies to the present case, inasmuch as the offense was committed before the act of 1862 took effect. In the next place, it is clear that theoffense was not affected by the act; and hence that in all particulars connected with the character and grade of the offense they must be determined by the prior law. The only prior law then in existence was that of 1860. I am further of opinion that the legislature, in saying that no offense committed previous to the passage of the act should be affected by it, intended also to say that nothing connected with the offense, whether in regard to its constituent elements or the mode of its punishment, should be affected by the act. The language is general, and embraces, *Page 141 
I think, the penalty affixed to the commission of the crime as well as the crime itself. For all the purposes of such an offense the act was as completely obliterated as if it had never been passed. The act was to have no effect upon previous offenses, except that where it prescribed or mitigated punishment, such punishment should be applied. The very exception shows that except within the range of the exception contained in the section itself, the offense in all its aspects of definition, commission, indictment, trial and punishment, was to stand wholly upon the prior law. The very next section, by way of greater caution, and to effectuate the same object, saves pending prosecutions from the effect of the general repeal.
We must, therefore, look at the exception in this section, and see if the act prescribes a mitigated punishment for the offense of murder in the first degree. If it does, the provisions of the act of 1862 apply, and the sentence in this case, which is substantially in conformity to it, may be supported, unless there be another defect or irregularity to which I shall presently refer. If it be not a mitigated punishment, then the provisions of the act of 1860 apply, and the sentence in this case, which is wholly different from and inconsistent with the one there prescribed, cannot be supported. The act of 1862, by express enactment, declared that persons convicted of murder in the first degree should suffer death for the same, and by necessary implication and the repeal of the acts of 1860 and 1861, revived the provisions of the revised statutes in regard to the mode of inflicting that punishment, and the time when it should be inflicted. Hence the execution must take place by hanging by the neck within eight weeks from the time of the sentence.
The act of 1860, while it provided by strong and I think necessary implication that sentence of death should be pronounced for a crime punishable with death, did not contemplate that the period of carrying such sentence into effect *Page 142 
should be named therein, and expressly required that simultaneously with the sentence of death there should be a sentence of confinement at hard labor in the state prison until the indefinite period should arrive when the punishment of death should be inflicted. Such period could not lawfully arrive until the lapse of one year after the sentence of death was pronounced, nor at any time afterwards, however remote, until the warrant of the executive should be issued commanding the said sentence of death to be carried into execution.
I am by no means prepared to say that the punishment prescribed by the revised statutes and the law of 1862 was a mitigated
punishment, compared with that of the act of 1860. The former was temporary imprisonment followed by violent death; the latter was longer imprisonment, which might continue for life, and might or might not be terminated in the discretion of the governor, after the lapse of a year, by hanging by the neck. One involved the certain infliction of the death penalty, the other its possible permanent postponement. Indeed, it is not entirely clear that an immediate or speedy violent death would be a milder punishment than one postponed for twelve months and preceded by imprisonment.
At all events, it seems to me a punishment of an entirely different character, radically different from that of the act of 1860, and therefore obnoxious to the objection of an ex postfacto law. An ex post facto law is not merely a law which punishes as criminal an act which when done was innocent, or punishes with increased severity a crime which at the time of its commission was subject to a milder penalty, but a law which essentially changes the mode or nature of the punishment. It is upon the ground of its essential injustice that such an act comes within the constitutional inhibition and cannot be passed. And it is essentially unjust and oppressive to impose upon a particular offense a punishment radically different from that previously lawful; *Page 143 
because it leaves to the judiciary the ungrateful and impossible task of deciding whether the modified penalty be in reality a mitigated one. In matters involving life and liberty no uncertainty should rest upon such a question, and a radical change in the mode of punishment should be condemned as ex postfacto and unconstitutional, unless clearly and indisputably a mitigation of the former punishment.
For this reason I am of opinion that the judgment pronounced upon the prisoner Ratzky was unwarranted by law, and notwithstanding the reluctance felt by every well-regulated mind to discharge a prisoner, who, upon the facts, we must assume was guilty of one of the highest crimes known to the law, I see no alternative except to reverse the judgments of the courts below, and to order the discharge of the prisoner; unless we are authorized, under the provisions of the act of 1863 (chap. 226), upon the ground that the conviction has been legal and regular, and that the error, if any, is in the sentence — to remit the record to the court of oyer and terminer with directions to pass sentence in conformity with the law of 1860.
The act just referred to was amendatory of the revised statutes, and the whole, read together, provided in effect that on affirmance by the supreme court of the judgment appealed from, it should direct the sentence pronounced to be executed, and it should be executed accordingly; and that on reversal by the supreme court of the judgment appealed from, it should either direct a new trial or that the defendant be absolutely discharged — according to the circumstances of the case; "provided, however" (and this is the amendment made by the act of 1863), "that the appellate court shall have power, upon any writ of error, when it shall appear that the conviction has been legal and regular, to remit the record to the court in which such conviction was had, to pass such sentence thereon as the said appellate court shall direct."
This provision of the revised statutes, although nominally *Page 144 
referring only to the supreme court, was intended, as is, I think, sufficiently obvious from the context, especially when considered in connection with the language of the act of 1863, to embrace all appellate courts which should sit in review of the original judgment. We may, therefore, assume that it covers the action of this court. We must further assume that the conviction has been legal and regular; for nothing appears to warrant a contrary presumption, and no bill of exceptions is presented alleging any error on the trial.
The only question that remains is, whether the legislature intended to pass the act in question so as to apply the same to offenses previously committed, and for which indictments had already been found; and if so, whether it was competent for them to do so, or whether the act was designed, and must be construed to operate only upon offenses thereafter perpetrated.
Before discussing that question it is proper to remark that, as the record now stands (and nothing else is properly before us), the sentence was pronounced on the 20th day of April, 1863 — four days before the passage of the act of 1863 — which took place on the 24th day of April, 1863. This presents to our view two fatal difficulties with the sentence as it now stands. 1st. That it does not come within the saving operation of the act of 1863, but for which I think the prisoner would be entitled to an absolute discharge; and 2d. That if the sentence ought to have been pronounced under the revised statutes, it is void as naming a day for execution beyond the eight weeks' limitation fixed therein as the maximum period which can intervene between the day of sentence and the day of execution.
We cannot, as it appears to me, take notice of the fact suggested, outside of the record, that the sentence of the court was not pronounced till the third day of August, 1863. The record avers the contrary, and if the fact be really otherwise, I see no other mode of introducing it into *Page 145 
the record than to remit the proceedings to the court below, with permission to apply to that court to amend the record so as to conform to the truth of the case.
We are not, therefore, in a situation, and have not the legal right to affirm this judgment in its present condition; and we must either reverse it absolutely, and direct the discharge of the prisoner, or we must suspend judgment thereon, and remit the proceedings to the court below to enable the people to apply for the amendment indicated. I am in favor of this latter course; and if it shall be adopted, it remains to consider whether it is advisable at this time to declare our opinion in advance upon the construction and constitutionality of the law of 1863, upon the assumption that the question is likely hereafter to arise upon the amended record.
On the whole, as the question does not now arise, and may perhaps never arise, and has not been fully discussed in the arguments hitherto made, I think it premature to express an opinion upon it at this time. I think further proceedings should be for the present stayed in this court, and the record remitted to the court below, to enable the defendants to apply for an amendment thereof, if they shall be so advised.
JOHNSON, J., concurred in the views of HOGEBOOM, J., and was in favor of suspending the proceeding to permit an amendment of the record.
MULLIN, J., read an opinion sustaining the sentence.
Judgment reversed, and the record directed to be remitted to the court of oyer and terminer, with directions to sentence the prisoner to suffer death for the crime whereof he stands convicted; and that he be confined at hard labor in the state prison until such punishment of death shall be inflicted. *Page 146